EDWARD C. COCCHIO, PETITIONER-RESPONDENT, v. CONDENSER SERVICE & ENGINEERING CO., INC., RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 19, 1951—Decided April 26, 1951.

252

Before Judges JACOBS, EASTWOOD and BIGELOW.

*Mr. Isidor Kalisch* argued the cause for the petitioner-respondent (*Mr. Morris Edelstein,* attorney).

*Mr. Walter H. Jones* argued the cause for the respondent-appellant.

The opinion of the court was delivered by

EASTWOOD, J. A. D. This is an appeal from an award of compensation to petitioner by the Workmen's Compensation Division of the Department of Labor and Industry for injuries sustained in an automobile accident which occurred in Pekin, Illinois. Our review of the record brings us to a conclusion contrary to that reached by the deputy director. Accordingly, under the authority of *Rules* 1:2–20 and 4:2–6, we are making new findings of fact.

In September, 1947, the petitioner went from New Jersey, where he was employed by the respondent, to Pekin, Illinois, as a member of a construction crew to work on a project there. The terms of employment were made known to him before he left for the job in question, *viz.*: that he would be employed on a basis of 12 hours per day for which he would receive a stipulated hourly rate of compensation and that he would re-

ceive $5 per day additional for lodging and meals. Other employees came from Wisconsin to work on the same project. The men were permitted to decide which shift they preferred to work and petitioner selected the day shift, 8.00 A. M. to 8.00 P. M.

The town of Pekin is a small municipality with limited accommodations. Cocchio stated that upon arrival, Hans Guildi, a member of the Wisconsin crew and foreman of the night shift, selected the "Taswell House" as a lodging place and accordingly petitioner and a number of the workmen engaged rooms at that hotel. The men were transported by their employer to and from the site of their employment, several miles distant, as well as to a place where they could eat lunch during their working hours. However, they were not permitted to use the vehicle after their return to the hotel in the evening. The claimant testified that they were on a 24-hour call and after completion of their daily shift, if they left the hotel, they were required to leave word there where they could be reached if needed.

On Sunday, September 14, 1947, petitioner returned to the hotel after completing his regular shift, bathed and dressed. At approximately 9:30 P. M., he travelled about Pekin in search of other members of the crew. Not finding anyone, he looked unsuccessfully for a place in Pekin where he might obtain a "hot" dinner. He learned of a place called the "Chicken Barn" located about two miles out of town. While en route in a taxicab, which he had engaged to transport him, a collision occurred between the taxi and another automobile. As a result thereof petitioner was severely injured.

Petitioner filed his petition for compensation under our Workmen's Compensation Act, claiming the injuries thus sustained to be compensable. Respondent denied petitioner's contention and asserted that the accident occurred while the employee was "on his own" and not in the pursuit of any function related to his employment. The Division found for the employee, from which finding respondent appeals directly to this court by reason of the fact that the accident causing

petitioner's injuries occurred outside of this State. *Stetser v. American Stores Co.*, 124 *N. J. L.* 228 (*E. & A.* 1940).

The employer contends that petitioner failed to sustain the burden of establishing by a preponderance of the proofs, an injury by accident arising out of and in the course of his employment. It is argued that petitioner's employment ceased for the day at 8:00 P. M. and that he was entirely on his own thereafter; that no control was exercised over the employees either as to lodging or as to their dinner arrangements; and that the petitioner was not undertaking duties of his employment at the time of the accident in question, nor anything incidental thereto, but was in pursuit of personal pleasures.

The employer also disputes the division of responsibility for payment of the counsel fee awarded to petitioner's counsel.

The employee contends that he was under 24-hour supervision; that he was directed by the foreman, Guildi, where to lodge; that in response to an inquiry directed to Guildi where he might get a dinner on Sunday, he was informed that all places in the town of Pekin closed on Sunday and that it would be necessary for him to go out of town to secure a meal. Guildi denied petitioner's contentions and stated that he exercised no control over the employees after their regular 12 hours of duty. He was corroborated by the foreman of the other crew of workmen who stated that he knew of no restrictions on the men after their shift of work was completed.

Petitioner further argues that the Taswell House ought to be considered the employer's premises and that inasmuch as that hotel did not provide hot meals for the employees returning home late at night, they were at liberty to make a reasonable search for same. Petitioner asserts that he was confronted with an emergency, *i. e.*, the necessity of getting a hot dinner, rather than eating a cold supper, and that the employer ought reasonably to expect and demand him to take proper care of himself and to fortify himself with a hot dinner. It is contended, therefore, that the petitioner's trip outside of Pekin in search of a hot dinner was reasonably inciden-

tal to his employment and that an injury sustained in the course thereof is compensable.

Mr. Justice Oliphant, in the case of *Beh v. Breeze Corporation*, 2 *N. J.* 279, at *pp.* 282, 283 (1949), discussing what constitutes an accident arising out of and in the course of the employment, states:

"Early in the history of judicial interpretation of the Workmen's Compensation Act it was held 'An accident arises "out of" the employment when it is something the risk of which might have been contemplated by a reasonable person, when entering the employment, as incidental to it * * *. A risk is incidental to the employment when it belongs or is connected with what a workman has to do in fulfilling his contract of service.' *Bryant v. Fissell*, 84 *N. J. L.* 72 (*Sup. Ct.* 1913); and in *Belyus v. Wilkinson, Gaddis & Co.*, 115 *N. J. L.* 43 (*Sup. Ct.* 1935); *affirmed*, 116 *N. J. L.* 92 (*E. & A.* 1936), it was said a risk is incidental to the employment when it grows out of or is connected with what a workman has to do in fulfilling his contract of service. A risk may be incidental to the employment when it is an ordinary one directly connected therewith or one indirectly connected with the employment because of its special nature. There must be a causal connected between the condition under which the work is required to be done and the resulting injury. That injury must have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

It is well settled that a claimant must establish the foregoing elements of his claim by a preponderance of the evidence. *Parker v. John A. Roebling's Sons Co.*, 135 *N. J. L.* 440 (*Sup. Ct.* 1947); affirmed 136 *N. J. L.* 635 (*E. & A.* 1948).

Our Supreme Court, in the case of *Sanders v. Jarka Corp.*, 1 *N. J.* 36, 39 (1948), stated:

"An accident arises 'out of' employment when it in some manner is due to a risk reasonably incident to the employment. It was clearly defined in *Bryant, Admx., v. Fissell*, 84 *N. J. L.* 72 (*Sup. Ct.* 1913):

'We conclude, therefore, that an accident arises "out of" the employment when it is something the risk of which might have been contemplated by a reasonable person, when entering the employment, as incidental to it. * * *

'A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. * * *

'And a risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment.' "

In the matter *sub judice*, the petitioner's contention that he was on 24-hour call is uncorroborated and is denied by the foreman of the night crew working on the job, two workmen from the petitioner's crew and by the company's bookkeeper testifying from time records. Petitioner's assertion that he was required to advise the hotel clerk where he might be reached at any time for recall during his off-duty hours, is uncorroborated and refuted by the employer's witnesses. Respondent's witness, Guildi, testified that there were restaurants in Pekin serving meals on Sunday and denied that he informed petitioner that he must go out of town to get a meal as petitioner alleges. We find an absence of convincing proof that petitioner's trip arose "out of" or was made for the "concurrent cause" of serving his employer and gratifying his personal pleasures. (See *Marlin v. Hasbrouck Heights, &c., Savings Assn.*, 132 *N. J. L.* 569 (*Sup. Ct.* 1945).

Our examination of the record persuades us that the petitioner failed to bear the burden of establishing the essential elements of his claim by a preponderance of the evidence.

In the light of the foregoing determination, it becomes unnecessary to pass upon the respondent's ground of appeal respecting award of counsel fee.

The judgment of the Workmen's Compensation Division is reversed, with costs.